**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VERNON MADISON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 16-00191-KD-M** |
| | ) | |
| **JEFFERSON S. DUNN,** | ) | |
| **Commissioner of the Alabama** | ) | |
| **Department of Corrections,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>ORDER</u>

This action is before the Court on Petitioner Vernon Madison's petition for writ of habeas corpus (Doc. 1), motion for stay of execution (Doc. 2), Respondent Jefferson S. Dunn's motion to dismiss pursuant to 28 U.S.C. § 2244(b) (Doc. 6), Respondent's motion to dismiss for lack of exhaustion (Doc. 7), Respondent's brief in opposition to Madison's petition (Doc. 9), Respondent's opposition to the motion for stay (Doc. 10), and Madison's response to the motions to dismiss (Doc. 12).  Upon consideration and for the reasons set forth herein, Respondent's motion to dismiss Claim One for lack of exhaustion is DENIED, Madison's petition for writ of habeas corpus is DENIED, his motion for stay of execution is DENIED and Respondent's motion to dismiss Claim Two pursuant to 28 U.S.C. § 2244(b) and for failure to exhaust is GRANTED.

**I. Background**

In May 1985, Petitioner Madison was indicted for capital murder for killing Julius Schulte, a police officer with the Mobile, Alabama Police Department.  In September 1985, a

jury found Madison guilty of capital murder. He was convicted and sentenced to death.  His first conviction and death sentence were set aside. *Madison v. State*, 545 So.2d 94, 99–100 (Ala.Crim.App.1987).   He was tried and again convicted and sentenced to death. The Alabama Court of Criminal Appeals reversed this decision.  *Madison v. State*, 620 So.2d 62, 63 (Ala.Crim.App.1992). Madison was tried a third time and again convicted of capital murder and sentenced to death. *Madison v. State,* 718 So.2d 90, 94 (Ala. Crim. App. 1997).  His conviction and sentence were affirmed on direct appeal by the Alabama Court of Criminal Appeals, *id*. at 104, and the Alabama Supreme Court, *Ex parte Madison*, 718 So.2d 104, 108 (Ala. 1998). The petition for writ of certiorari was denied. *Madison v. Alabama*, 525 U.S. 1006, 119 S.Ct. 521 (1998). Madison's petition for state post-conviction relief was dismissed by the state trial court and the dismissal was affirmed. *Madison v. State*, 999 So.2d 561 (Ala.Crim.App. 2006).

   Madison then filed his first petition for writ of habeas corpus under 28 U.S.C. § 2254 in this district court. The petition was denied. *Madison v. Allen,* 2011 WL 1004885 (S.D. Ala. March 21, 2011).  The Eleventh Circuit Court of Appeals reversed and remanded with instructions regarding Madison's *Batson* challenge. *Madison v. Comm'r, Ala. Dep't of Corr.*, 677 F.3d 1333 (11th Cir. 2012) (reh'g. denied *Madison v. Comm'r, Ala. Dep't of Corr.*, 484 Fed. Appx. 467 11th Cir. 2012) (table)) (cert. denied *Thomas v Madison*, 133 S. Ct. 617 (2012)).  On remand, this district court denied his petition. *Madison v. Allen*, 2013 WL 1776073 (S.D. Ala. Apr. 25, 2013). The decision was affirmed. *Madison v. Comm'r, Alabama Dep't of Corr.*, 761 F.3d 1240 (11th Cir. 2014) (cert. denied *Madison v. Thomas*, 135 S. Ct. 1562 (2015) (reh'g. denied *Madison v. Thomas,* 135 S. Ct. 2346 (2015)).

In January 2016, the State of Alabama moved the Alabama Supreme Court to set an execution date. (Doc. 2, p. 3) Madison then filed a petition in the Mobile County Circuit Court pursuant to Alabama Code § 15-16-23, wherein he moved the trial court to stay his execution on basis that he is incompetent to be executed (*id.*).  The Code provides for suspension of execution of the sentence of death of a convicted person, if "at anytime before the execution of the sentence, it is made to appear to the satisfaction of the trial court that the convict is then insane[.]" Ala. Code § 15-16-23.   Madison requested a delay in setting the execution date until his competency claim was adjudicated. However, the Supreme Court of Alabama set his execution for Thursday, May 12, 2016 (*Id.*).

The Mobile County Circuit Court found that Madison had made a preliminary showing of incompetency, ordered an evaluation, and held a hearing on April 14, 2016. (Doc. 2, p. 4) After post-trial briefs were filed, the state court denied his § 15-16-23 petition on April 29, 2016.  The circuit court found that Madison had "not carried his burden by a preponderance of the evidence, that it is more likely than not, that he, Madison, does not rationally understand the punishment he is about to suffer and why he is about to suffer it." (Doc. 7-2; *Madison v. State of Alabama*, Civil Action 1985-001385.80 (Document 43) (Circuit Court of Mobile County, Alabama, Apr. 29, 2016)).

Madison then filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, in this court. (Doc. 1)  As to his competency, Madison alleges that he has experienced multiple strokes including a recent thalamic stroke in January 2016, major vascular neurological disorders, vascular dementia, and other serious medical conditions including diabetes and hypertension. He further alleges that these medical problems have damaged his brain and left him with declining cognitive function, diminished mental capacity, severe memory deficits, dementia,

slurred speech, blindness, incontinence, and an inability to walk. (Doc. 1)

Based on his mental incompetence, Madison asserts that he does not have an independent recollection of the facts of his offense and does not have a rational understanding of why the State is seeking to execute him. Therefore, according to Madison, the State would violate the Eighth Amendment's prohibition against cruel and unusual punishment as provided in *Ford v. Wainwright*, 477 U.S. 399 (1986) should it carry out his execution.  The court has labeled this Claim One.

Madison also alleges that because he suffers from dementia, he is in a class of people for whom execution is categorically unconstitutional.  Madison argues that executing persons with diminished capacity would not serve the goals of the death penalty, *i.e.*, retribution or deterrence and would be unconstitutional as set forth in *Atkins v. Virginia*, 536 U.S. 304, 318 (2002).   The court has labeled this Claim Two.

Madison also filed a motion to stay his execution. (Doc. 2)  Madison argues that a stay of execution should be granted because he has a non-frivolous claim of constitutional error that cannot be resolved on the merits before the scheduled date of execution.

## II. Exhaustion of the *Ford* claim (Claim One)

Title 28 United States Code § 2254 requires that petitioners seeking relief in federal court must first exhaust available state remedies. Specifically, § 2254(b)(1) states:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect
the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Madison argues that, pursuant to Ala. Code § 15-16-23, there is no appellate review of

the state court's decision available in the Alabama state courts. Thus, he contends that he has

exhausted his state remedies.  In support, he relies on *Weeks v. State*, 663 So. 2d 1045 (Ala.

Crim. App. 1995) and *Magwood v. State*, 449 So. 2d 1267 (Ala. Crim. App. 1984). Both cases

held that § 15-16-23 decisions were not reviewable.  The statutes states:

> If after conviction and sentence to death, but at any time before the execution of
> the sentence, it is made to appear to the satisfaction of the trial court that the
> convict is then insane, such trial court shall forthwith enter an order in the trial
> court suspending the execution of the sentence to the time fixed in the order;
> and, if it subsequently is made to appear to the court that such convict, the
> execution of the sentence of whom has thus been suspended, is restored to
> sanity, the trial court shall forthwith have another order entered ordering and
> commanding the execution of the judgment and sentence originally awarded in
> said court at a time fixed in such order. **This mode of suspending the execution**
> **of sentence after conviction on account of the insanity of the convict shall be**
> **exclusive and final and shall not be reviewed or revised by or renewed**
> **before any other court or judge.** No court or judge in this state shall have the
> power or right to suspend the execution of sentence of any other court of record
> on account of the insanity of the convict. This section shall not prevent the judge
> or court from impaneling a jury to try the question of insanity or from examining
> such witnesses as he may deem proper for guidance.

Ala. Code § 15-16-23 (emphasis added).

Respondent argues that Madison has failed to exhaust his state remedies because the

state court's decision made pursuant to § 15-16-23 is an appealable decision, which Madison

has failed to appeal. Respondent points out that Ala. Code § 15-1-1, which pertains to §15-16-

23, states: "Any provisions of this title regulating procedure shall apply only if the procedural

subject matter is not governed by rules of practice and procedure adopted by the Supreme

Court of Alabama." Ala. Code § 15-1-1. (Doc. 7 at 2) Ala. R. Crim. P. 32.4 states:

> A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. **Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule.** Proceedings under this rule shall be governed by the Rules of Criminal Procedure, except that the trial court in its sole discretion may allow the taking of depositions for discovery or for use at trial.

Ala. R. Crim. P. 32.4 (emphasis added). Ala. R. Crim. P. 32.10(a) states:

> Any party may appeal the decision of a circuit court according to the procedures of the Alabama Rules of Appellate Procedure to the Court of Criminal Appeals upon taking a timely appeal as provided in Rule 4, Alabama Rules of Appellate Procedure….

Ala. R. Crim P. 32.10.

In the motion to dismiss for lack of exhaustion, citing *Ex Parte Cate*, 134 So.3d 870 (Ala. 2013), Respondent summarizes, "[i]n fact, when the Alabama Supreme Court reviewed § 15-16-22, a closely related 'cousin' to § 15-16-23 that pertains to competency evaluations prior to trial, the Alabama Supreme Court noted that these provisions were procedural in nature and that they must yield to the Alabama Rules of Criminal Procedure." (Doc. 7 at 3)  From this, Respondent makes a novel argument that §15-16-23 is unenforceable because it must yield to the general appellate rules of criminal procedure.

Upon review of *Ex Parte Cate*, the court concludes that Respondent overstates its relevancy to the issue at hand.  In *Ex Parte Cate*, the Alabama Supreme Court was faced with provisions in the Alabama Code and the Alabama Rules of Criminal Procedure that both addressed the procedure for ordering competency evaluations. The Alabama Supreme Court held, "Section 15–16–22(a) does not grant the trial court discretion to order a defendant to submit to a mental examination independent of the procedural framework of Rule 11.2(a)." 134 So. 3d at 875. For this pronouncement the Court referenced Ala. Code §15-1-1, which provides, [a]ny provisions of this title regulating procedure shall apply only if the procedural

subject matter is not governed by the rules of practice and procedure adopted by the Supreme Court of Alabama." 134 So. 3d at 8753, n.3.  However the Court concluded that the statute and the rule were not inconsistent: "The duty imposed by [§] 15-16-22(a) upon the trial court to order a mental examination of a defendant is consistent with Rule 11.2(a)(2); § 15-16-22(a) does not expand the trial court's discretion beyond the limits established by Rule 11.2(a)." 134 So. 3d at 875.

In this case, § 15-1-1 is inapplicable because the subject matter of §15-16-23 is not addressed in a rule of practice and procedure adopted by the Supreme Court of Alabama. Section 15-16-23 prohibits any other court from reviewing the trial court's determination regarding suspension of execution under this section.  In other words, no other court has jurisdiction to consider a petition for suspension of the execution or to review the decision of the trial court. The bar on review by other courts of § 15-16-23 decisions is a substantive rule, not procedural.  In contrast, Ala. R. Crim. 32.10 governs who can appeal (any party) and how (using Alabama Rules of Appellate Procedure), it does not govern whether an issue is appealable.  As the Alabama Supreme Court stated in *Ex parte Ward*, "[t]here are, however, some limitations on our authority to promulgate and effectuate rules. '[R]ules shall not abridge, enlarge or modify the substantive right of any party." Const. of 1901, amend. 328, § 6.11[.]'" 540 So. 2d 1350, 1351 (Ala. 1988) (internal citations omitted). Any rule allowing a petitioner to appeal a suspension of execution would be an enlargement of the limited substantive right granted in § 15-16-23 (to seek a stay from the trial court) and thus in violation of the Alabama Constitution. *See Schoenvogel ex rel. Schoenvogel v. Venator Grp. Retail, Inc.*, 895 So. 2d 225, 236 (Ala. 2004) ("[I]t is clear that § 6.11 envisions that this Court's power to promulgate rules of practice and procedure for all courts could supersede legislatively enacted rules of practice

and procedure, so long as the rules promulgated by this Court did not abridge, enlarge, or modify the substantive rights of any party, and subject to the right of the Legislature to change the court-adopted rules by a general act of statewide application.").

The court finds that the language of § 15-16-23 expressly provides that a determination made under this section is not appealable. The Alabama Court of Criminal Appeals has held the same. *Weeks v. State*, 663 So. 2d at 1046 [1] ("This case is governed by § 15-16-23 and this court's application of that statute in *Magwood.* The statute clearly states that a finding by the trial court on the issue of insanity, as it relates to this statute, is not reviewable by any other court.").   Accordingly, Madison has exhausted his state remedies under § 15-16-23 as to Claim One. Thus, Respondent's motion to dismiss the petition for writ of habeas corpus for lack of exhaustion as to Claim One (Doc. 7) is DENIED and his opposition to the motion to stay (Doc. 10) based upon this same argument is OVERRULED.

The court acknowledges that this is Madison's second habeas petition and that he brings a *Ford v. Wainwright* claim for the first time.  However, Madison's *Ford v. Wainwright* claim of incompetency to be executed (because of mental incompetence at the time of the scheduled execution) is not a claim that must be brought in an initial habeas petition. *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S. Ct. 2842, 2853 (2007) ("We conclude, in accord with this precedent, that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254

---

[1] In *Weeks v. State*, the Alabama Court of Criminal Appeals quoted its previous decision in *Magwood v. State*, which expanded upon the reasoning behind Ala. Code §15-16-23 as follows: "It is interesting to note that the legislature provided that the order of the trial court '... shall not be reviewed or revised by or renewed before any court or judge. No court or judge in this state shall have the power or the right to suspend the execution of sentence of any other court of record on account of the insanity of the convict.'  This provision was obviously necessary if any sentence of execution is ever to be carried out. Otherwise, a person awaiting execution

application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe."). Therefore, the court finds that the decision in *Panetti* provides jurisdiction as to Madison's *Ford*-based incompetency claim brought in his second habeas petition.

## III. *Atkins* claim (Claim Two)

In his petition, Madison raises a second claim wherein he alleges that he falls within a class of persons, those with diminished mental capacity caused by dementia, for whom there is a categorical ban on the death sentence based upon the Eighth Amendment citing *Atkins v. Virginia,* 536 U.S. 304 (2002) and *Roper v. Simmons,* 543 U.S. 551 (2005). (Doc. 1, ¶ 31-34, p. 19-20)  In the motion to stay, Madison argues that his execution should be stayed because the confluence of the line of cases following *Atkins* and *Roper* dictates that he falls within this protected category of persons and his execution would be unconstitutional. (Doc. 2, p. 10-12)

Respondent moves to dismiss this second claim pursuant to 28 U.S.C. § 2244(b) (Madison failed to obtain authority from the Court of Appeals for the Eleventh Circuit before bringing his second claim in a second habeas petition) and because Madison failed to fairly present the claim and exhaust his remedies in state court. (Doc. 6)

Title 28 U.S.C. § 2244(b)(3)(A) provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  An exception exists when the Supreme Court has expressly held that § 2244(b) does not apply to a specific type of claim, such as in *Panetti*, where the Supreme Court held that the "statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe." 551 U.S. at 947.   In *Ford v. Wainwright,* the Supreme Court held that the "Eighth Amendment prohibits a State from

carrying out a sentence of death upon a prisoner who is insane." 477 U.S. at 409–410. In *Panetti,* the Supreme Court held that a *Ford*-based claim is not ripe until the petitioner's date of execution has been set. 551 U.S. at 945-957.  The Supreme Court concluded "that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe." 551 U.S. at 945.

Madison has not presented any support for a finding that an *Atkins* claim is in the "unusual posture" wherein the bar of § 2244(b)(3) is lifted, thus allowing Madison to file a second or successive habeas petition based on this claim without first obtaining approval from the appropriate court of appeals.   Moreover, *Panetti* is clear that the waiver of the restrictions in 2244(b) only applies to *Ford*-based claims.  Consequently, the Eleventh Circuit must authorize this claim before Madison's petition may be considered by this court.

Additionally, Madison's second claim was never fully and fairly presented to the state court and is thus not exhausted.  Madison's state court petition for suspension of his death sentence did not raise an argument based upon an extension of *Atkins* to include a category of persons with dementia. (Doc. 7-1)  However, the state court transcript indicates that Madison argued at the hearing that dementia placed "him within a special category for people for whom execution is not appropriate" based on *Ford* and *Panetti,* but without mention of *Atkins.* (Doc. 8-1, p. 133, Hearing Transcript)  Moreover, in a post-trial filing, Madison briefly references *Atkins* and the argument he now makes before this court. (Doc. 8-2, pp. 10-11)   But the court finds that these brief references to the issue failed to give the trial court a fair opportunity to consider the issue.  This is especially true due to the limited nature of the proceedings pursuant

to § 15-16-23, *i.e.*, to determine the sanity of the petitioner.  Thus, the claim has not been exhausted.

The Eleventh Circuit has stated that a prisoner cannot show "a substantial or significant likelihood of success on the merits" of an issue when that issue is "squarely foreclosed" by the exhaustion requirement found in 28 U.S.C. § 2254. *Gore v. Crews*, 720 F.3d 811, 815 (11th Cir. 2013).  Therefore, the court finds that it lacks jurisdiction to consider Madison's *Atkins*-based claim in his habeas petition and the *Atkins*-based argument in his motion to stay. Accordingly, the Respondent's motion to dismiss the second claim in the petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2244(b) (Doc. 6) is GRANTED and that claim is dismissed without prejudice.  *Gore*, 720 F.3d at 815 ("If a petitioner fails to exhaust his state remedies, a district court must dismiss the petition without prejudice to allow for such exhaustion.").

**IV. Injunctive relief as to the *Ford* claim (Claim One)**

This court's authority to grant a stay of execution is found in 28 U.S.C. § 2251.[2] "A request for a stay of execution is a request for equitable relief."  *White v. Jones*, 408 Fed. Appx. 293, 294-95 (11th Cir. 2011)[3] (citing *Williams v. Allen*, 496 F.3d 1210, 1212–13 (11th Cir. 2007) and *Hill v. McDonough*, 547 U.S. 573, 584, 126 S.Ct. 2096, 2104 (2006)). Equitable principles to be considered include "(1) 'sensitiv[ity] to the State's strong interest in

---

[2] "(a) In general -- (1) Pending matters.--A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding." 28 U.S.C. § 2251(a)(1).

[3] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." U.S. Ct. of App. 11th Cir. Rule 36-2.

enforcing its criminal judgments without undue interference from the federal courts,' (2) the plaintiff's satisfaction of 'all of the requirements for a stay, including a showing of a significant possibility of success on the merits,' (3) the application of 'a strong equitable presumption against the grant of a stay where the claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay,'[4] and (4) protection of the 'States from dilatory or speculative suits.'" *White*, 408 F. Appx. at 294-295 (citations omitted). "The strong interest of the State and the victim's families is in 'the timely enforcement of a sentence'", [ ] which acquires 'an added moral dimension' once post-trial proceedings finalize." *White*, 408 F. Appx. at 294-295 (quoting *Calderon v. Thompson*, 523 U.S. 538, 556, 118 S.Ct. 1489, 1501 (1998) and *Arthur v. King*, 500 F.3d 1335, 1340 (11th Cir.2007)).

    As to satisfaction of the requirements for a stay, the court may grant a stay of execution if the moving party shows a substantial likelihood of success on the merits, irreparable injury unless the stay issues, that the stay would not substantially harm the other party; and if issued, the stay would not be adverse to the public interest. *In re Holladay*, 331 F.3d 1169, 1176 (11th Cir. 2003) (citing *Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir. 1987)).

    Without dispute, Madison has met the second criteria. Madison will suffer irreparable injury if the stay is not granted. *In re Holladay*, 331 F.3d at 1177 (granting a stay of execution and finding that "the irreparability of the injury that petitioner will suffer in the absence of a stay to be self-evident"). As to the third criteria, substantial harm to other parties, the Eleventh Circuit Court of Appeals has explained that no substantial harm will "flow to the State of Alabama or its citizens from postponing petitioner's execution to determine whether the

---

[4] Madison filed his state petition within a month of the motion to set his execution date. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998). He filed his petition for habeas corpus in this court within a week of the state court's decision. Thus, the court finds this presumption inapplicable.

execution would violate the Eighth Amendment." *In re Holladay*, 331 F.3d at 1177.  As to the fourth criteria, the Eleventh Circuit has acknowledged the "State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Jones v. Comm'r. Georgia Dep't of Corr.*, 812 F. 3d 923,932 (11th Cir. 2016).  The court is also mindful that "[e]ach delay, for its span, is a commutation of a death sentence to one of imprisonment." *Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir.1983).  However, it would not be adverse to the public interest to stay an execution that may violate the Constitution. Thus, the court turns to the first factor: whether there is a substantial likelihood of success on the merits.

Madison argues that there is a substantial likelihood that he will succeed on the merits of his claim because the Eighth Amendment prohibits his execution.  The court disagrees and finds that not only is there not a substantial likelihood that Madison will succeed on the merits, but that the petition is due to be denied on the merits.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996, this court does not have "plenary authority to grant habeas relief" but instead, the authority is "conditioned on giving deference to the states." *Jones v. Walker,* 496 F. 3d 1216, 1226 (11th Cir. 2007). Specifically, 28 U.S.C. § 2254 provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

"Pursuant to § 2254(d)(1), the phrase 'clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Smith v. Campbell*, 620 Fed. Appx. 734, 746 (11th Cir. 2015) (quoting *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 1172 (2003) (quotation marks omitted)). "A state court's application of federal law is not unreasonable under § 2254(d)(1) 'so long as fairminded jurists could disagree on the correctness of the state court's decision.'" *Smith*, 620 Fed. Appx. at 746 (quoting *Harrington v. Richter,* 562 U.S. 86, 101, 131 S.Ct. 770, 786 (2011) (quotation marks omitted)).

"As to § 2254(d)(2), 'a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Smith*, 620 Fed. Appx. at 746 (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003)). "We may not characterize ... state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Smith*, 620 Fed. Appx. at 746 (quoting *Brumfield v. Cain,* 576 U.S. ——, ——, 135 S.Ct. 2269, 2277 (2015) (quotation marks omitted)). "The Supreme Court has found a state court's factual finding to be unreasonable where the record before the state court did not support the factual finding." *Smith*, 620 Fed. Appx. at 746-747 (quoting *Wiggins v. Smith,* 539 U.S. 510, 528–29, 123 S.Ct. 2527, 2539, 156 L.Ed.2d 471 (2003)).

In *Panetti,* the Supreme Court explained that "[u]nder AEDPA, a federal court may grant habeas relief, as relevant, only if the state court's "adjudication of [a claim on the merits] ... resulted in a decision that ... involved an unreasonable application" of the relevant law. When a state court's adjudication of a claim is dependent on an antecedent unreasonable

application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." 551 U.S. 930 at 953.

First, Madison argues that because of his brain damage and resulting mental incompetency and dementia, he does not have an independent recollection of the offense for which he was convicted and does not have a rational understanding of why the State is attempting to execute him.  Madison argues that the state court failed to consider his dementia and resulting deficits in long-term memory and incorrectly found that he "failed to meet his burden of proving by a preponderance of the evidence that he '**suffers from mental illness which deprives [Mr. Madison] of the mental capacity to rationally understand that he is being executed as a punishment for a crime.**"[5] (emphasis in original)  Madison argues that "by failing to consider whether [he] was incapable of rationally understanding his execution because of his dementia and corresponding memory deficits, the state court unreasonably imposed a standard more restrictive than what the law clearly established by *Panetti* requires" and as a result "the state court's determination was both an unreasonable application of, and contrary to, clearly established federal law." (Doc. 2, p. 9-10)

Second, Madison argues that by limiting the analysis to whether he was incompetent because of "mental illness", the "state court failed to address crucial facts regarding his strokes and resulting dementia."  Madison argues that this failure to address cannot be construed as a

---

[5]  The court notes that the state court order indicates that the parties agreed to the burden of proof, as follows:  "The parties agree that the burden of proof in this case is that the Petitioner must satisfy the trial court by a preponderance of the evidence, i.e., that it was more likely so than not, that the Petitioner suffers from a mental illness which deprives the prisoner of the mental capacity to rationally understand that he is begin executed as a punishment for a crime." *Madison v. State of Alabama*, Civil Action 1985-001385.80 (Document 43, p. 5) (Circuit Court of Mobile County, Alabama, Apr. 29, 2016).

rejection of that evidence, and therefore, the decision was based on an unreasonable determination of the facts in light of the evidence presented. (Doc. 2, p. 10)

Based upon the evidence cited in the state court's opinion, it is clear that the state court considered the evidence of Madison's recent diminished capacity and memory loss in reaching its determination that Madison had the requisite rational understanding that he was to be executed because of the murder he committed and that Madison understood that his execution was retribution for the crime. See *infra*. Thus, whether the court was required under *Ford* to consider mental issues that may fall outside of the clinical definition of mental illness but still affects rational thinking, is moot. The question then is whether the state court's determination was an unreasonable application of, and contrary to, clearly established federal law as enunciated in *Ford* and *Panetti*. In this regard the court agrees with the Respondent that the state court's decision was not an unreasonable application of, nor contrary to, clearly established federal law and adopts the Respondent's reasoning (as amended) [6] as follows:

First the state court correctly stated the law to be applied. The state court recognized the holding of *Ford* as being that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." (Vol. II, Tab R-12, at 3 (*quoting Ford*, 477 U.S. at 409-10)) The state court further identified the holding of *Panetti* as requiring an inquiry into whether a prisoner's mental illness deprives him of the mental capacity to understand that he is being executed as a punishment for a crime, including whether the prisoner has a rational understanding of the State's rationale for his execution. (Vol. II, Tab R-12, at 4 (*citing Panetti*, 551 U.S. at 954, 959))

---

[6] To a substantial extent, the reasoning is adopted verbatim from Doc. 9, pp. 12-18.

The state court recognized that Madison was entitled to a "fair hearing," including an opportunity to be heard, the opportunity to submit evidence and argument through counsel, and the right to present independent expert psychiatric evidence through the defense. (*Id*. at 3-4 (*quoting Panetti,* 551 U.S. at 949))   The state court further identified the question considered as whether "it was more likely than not, that the Petitioner suffers from a mental illness which deprives the prisoner of the mental capacity to rationally understand that he is being executed as a punishment for a crime." (*Id*. at 4)

The state court considered the testimony of Dr. Kirkland, a court-appointed forensic psychologist, Dr. Goff, the defense-retained expert psychologist, and Warden Davenport, the Warden of Holman Prison (where Madison is housed). (*Id*. at 10)  The state court also considered all of the exhibits offered by Madison, including medical records from the University of South Alabama Medical Center and Mobile Infirmary. (*Id*. at 10)

The state court found (1) that Madison failed to meet his burden of proof, (2) that the testimony of the court-appointed expert was due to be credited, (3) that Madison has a rational understanding, as required by *Panetti*, that he is going to be executed because of the murder he committed and a rational understanding that the State is seeking retribution and that he will die when he is executed, and (4) that the evidence does not support that Madison is delusional. (*Id*. at 10)

Thus, it is apparent that the state court adjudication of these claims applied the relevant *Panetti/Ford* standard for determining competency to be executed, considered all of Madison's factual averments, and found that any dementia, and the alleged deficits in memory associated with that condition, did not prevent Madison from having a rational

understanding of his execution and the reasons for his execution.[7]  In finding that Madison

was competent to be executed, the state court relied on the following facts:

1) Dr. Kirkland's finding that Madison did not suffer from paranoia, delusion, or
psychosis;

2) Dr. Kirkland's finding that "even though Madison was functioning at the low
average range of intellect, if not the low normal range, that 'while he may have
suffered a significant decline post-stroke, his current functioning still would
appear to result in a forensic finding that Madison understands the exact posture
of his case at this point.'";

3) Dr. Kirkland's finding that Madison was able to discuss each appeal and
"marveled each time with the fact that the whole process would end up being
back in Judge McCrae's court;

4) Dr. Kirkland's finding that Madison appeared to understand his legal situation
and is able to relate to his attorneys, including the ability to give details of the
history of the case regarding appeals and his concerns;

5) Dr. Kirkland's testimony that Madison could remember specific things about
the time of the offense as well as each trial, including the jury's advisory
recommendation and the *Batson* challenge considered by this Court in 2013;

---

[7] The trial court's focus on lack of evidence of delusion and psychosis was oriented toward
making specific findings regarding Madison's allegations in the state court petition that he did
suffer from delusions and psychosis. For example, Madison alleged in his petition that his
mental illness was "marked by paranoid delusions and other disabilities" (Vol. I, Tab R-1, at 1),
that an expert testified Madison had suffered "from a delusional disorder that has existed since
he was an adolescent" (Vol. I, Tab R-1, at 5), that Madison had a "well-documented history of
paranoia" of "a persecutory type" (*Id.*), and a claim that Madison had once exhibited delusional
thinking including a belief that he was being used as a guinea pig in medical experiments (*Id.*)
Madison further relied on testimony of another expert that he suffered "from paranoid illness of
profound proportion," "a paranoid state; that is, a psychotic mental illness," and that Madison
was expected to remain in "a psychotic condition" if he did not receive treatment [which he did
not in prison]." (*Id.* at 5-6) Madison further relied upon an allegation of a previous defense
expert that his "mental illness is chronic, and there is a more than ninety percent chance it will
never go away." (*Id.* at 6) Madison's own legal team, although suffering from the fact they
were lay witnesses, alleged that Madison was presently suffering from paranoid delusions. (*Id.*)
Against these, and numerous other unfounded allegations of delusions and paranoia in the
petition, the trial court prudently entered findings of fact.

6) Dr. Goff's report that Madison recognized he was in prison for murder;

7) Dr. Goff's report that Madison felt his conviction was "unjust,";

8) Dr. Goff's report that Madison "understands the sentence, specifically the meaning of a death sentence. He understands the idea of being dead…He understands the procedures, or at least he seemed to.";

9) Dr. Goff's testimony that, "I think [Madison] understands that he—that [the State is] seeking retribution. I don't think he understands the act that he is being—that he is being punished for.";

10) Medical records showing that Madison's January 2016 hospitalization was based on symptoms unrelated to a "small acute CVA" but rather on synthetic marijuana and methamphetamine use.";

11) Medical records showing Madison was evaluated in January 2016 and "completed receptive language task of answering complex yes/no questions and following multi-step commands with 100% [accuracy]. Expressive language tasks of naming items was completed with 100% [accuracy], automatic with a 100% [accuracy].";

12) Medical records from Madison's January 2016 hospitalization indicating that upon arrival at the hospital Madison "had an altered mental status, but apparently now is back to baseline.";

13) Medical records from May 2015 showing Madison was "awake/alert. Oriented to person, place and situation, still confused about time.";

14) Warden Davenport's testimony that Madison responded with "My lawyers are supposed to be handling that," in response to the reading of the death warrant; and

15) Warden Davenport's testimony that Madison was not receiving mental health treatment from the Alabama Department of Corrections.

(Vol. II, Tab R-12, at 5-9)  Based on this evidence, the state court found that Madison had not

carried his burden of proof on the issue of his competency. (Vol. II, Tab R-12, at 10) More

specifically, the state court found that Madison possessed a rational understanding that he was

being executed for the murder he committed and that his sentence was in retribution for the crime. (*Id.*)

Madison has attempted to convince this court that it should credit testimony that was more favorable to Madison's position and find the state court acted unreasonably in doing otherwise. However, that is not the role of this court. *See Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.")). The court may only examine the evidence to determine whether the state court's conclusions were unreasonable in light of the evidence that the state court reasonably found to be credible. In that regard, it was not unreasonable for the state court to rely on the opinions of Dr. Kirkland, which was supported by other evidence of record.

Madison also claims that the state court's factual findings constituted an unreasonable determination of the facts because the state court failed "to even consider evidence of dementia, and its impact on Mr. Madison's cognitive functioning and understanding of the proceedings." As previously stated, this is incorrect. In finding that Madison failed to prove by a preponderance of the evidence that he was incompetent to be executed, the state court relied on Madison's ability to talk with Dr. Kirkland about "very specific things that would indicate that he could remember specific things about the time of the offense even, as well as each trial, as well as the outcome with regard to judicial override and Batson challenge" and the death penalty versus life without parole. (Vol. II, Tab R-12, at 5-6) Finally, the state court also relied on Dr. Goff[8], who testified that despite any dementia, Madison "is able to

_____

[8] To the extent the two expert's opinions differed on the issue of whether Madison's dementia affected his competency to be executed, the state court's election to rely on Dr. Kirkland's opinion rather than Dr. Goff's opinion is entitled to great deference and will not be disturbed

understand the nature of the pending proceeding and he has an understanding of what he was tried for[.]" (Vol. II, Tab R-12, at 7)

The state court also took notice of Madison's confusion and mental status at the time of his hospitalization in January 2016 (Vol. II, Tab R-12, at 7), but then went on to note that Madison was "alert, well appearing, and in not distress" and "alter and oriented X 3" prior to his discharge (*Id.* at 8) The state court further relied on a consulting physician's notation that Madison had returned "back to baseline" by the time he was discharged from the hospital in January 2016. (*Id.* at 8) Thus, it is evident that the state court did consider the effects on Madison's dementia on his competency to be executed.

In sum, having considered the evidence deduced at the hearing, the court finds that the determination of facts by the state court was not an unreasonable determination of the facts. Also the state court's determination was neither an unreasonable application of, nor contrary to, clearly established federal law.

Ultimately the question presented by the first claim in Madison's habeas petition is whether "some fair minded jurists could agree" with the circuit court's ultimate conclusion that Madison is competent to be executed given the ultimate opinion of Dr. Kirkland (which the trial court fully credited) and Dr. Goff (of which the trial court partially credited), the medical records showing that Madison had returned to "baseline" before his discharge from the hospital in January 2016, and Madison's response to Warden Davenport's reading of the death warrant. *See Ferguson*, 716 F.3d at 1340. Because the answer to this question is "yes,

---

unless determined to be unreasonable. *See, e.g., Panetti v. Stephens*, 727 F.3d 398, 410-11 (5th Cir. 2013) (noting "[t]he [district] court's careful draw on the experts' conflicting testimony is entitled to 'great deference' from this Court" and that this "is probably sufficient by itself to sustain the district court's judgment under a clear-error standard.").

fair minded jurists could agree with that conclusion," Madison is not entitled to relief. *Id*. at 1340-41.

## V. <u>Conclusion</u>

The court finds that the state court correctly applied *Ford* and *Panetti* and that the decision was not based upon an unreasonable application of, or contrary to, clearly established federal law or an unreasonable determination of the facts in light of the evidence presented to the state court.   Accordingly, for the reasons set forth herein, Madison's petition for writ of habeas corpus is DENIED, his motion for stay of execution is DENIED, Respondent's motion to dismiss Claim Two (*Atkins* claim*)* pursuant to 28 U.S.C. § 2244(b) and for failure to exhaust is GRANTED, and Respondent's motion to dismiss for lack of exhaustion as to Claim One (*Ford* claim) is DENIED.

## VI. <u>Certificate of Appealability</u>

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the court must determine whether Madison is entitled to a certificate of appealability. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute states that an applicant is entitled to appeal a district court's denial of a habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims

debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000) or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003) (internal quotations omitted). Madison has not met his burden to show that reasonable jurists would find debatable his constitutional claims or that the issues he presented were adequate to deserve further review. Therefore, he is not entitled to a Certificate of Appealability.

     **DONE** and **ORDERED** this 10th day of May 2016.


                     **s / Kristi K DuBose**
                     **KRISTI K. DuBOSE**
                     **UNITED STATES DISTRICT JUDGE**